[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a civil action by the owner of residential premises against her insurance carrier seeking to compel a payment under the terms of the fire insurance policy for damages sustained at her residence by virtue of a fire that occurred on or about March 19, 1996.
The defendant has declined the payment and has filed several special defenses which are based on their position that the plaintiff set the fire herself and thereby caused her own loss and under such a scenario of arson, as alleged in the special defenses, the defendant would not be liable to pay under the policy. There is also an indication of a claim of fraud and material misrepresentation made to the company in connection with her claim and, in the four special defenses, they claim with some limitations of liability by virtue of deductibles which allegations do not propose an appropriate special defense.
The following constitute the findings of fact and conclusions of law of this court based upon the relevant, credible and admissible evidence along with the reasonable inferences therefrom presented to this court during the course of the trial.
The plaintiff was the owner of premises at 42 Lakewood Road, East Hampton, Connecticut. On July 8, 1995, the defendant was and still is a corporation licensed to transact fire insurance business in this jurisdiction and to insure dwellings and other property against loss or damage by fire. On July 8, 1995, the defendant issued to the plaintiff a policy bearing Policy #55RBA426675, insuring the plaintiff's dwelling against loss or damage by fire. On March 19, 1996, a date on which the policy in question was in effect, the plaintiffs dwelling house was greatly damaged by fire. On March 20, 1996, the plaintiff called said CT Page 2438 defendant and/or its agents to advise of her loss and to initiate claim procedures under the policy. On May 7, 1996, the plaintiff furnished the defendant with proof of losses required under the policy and with a statement as to the full costs of repair of said dwelling and replacement of said contents as required by said policy.
The defendant has declined to accept and pay said loss for reasons set forth in its special defenses to this lawsuit as aforesaid.
On the day of the fire, the plaintiff left her home before the fire started in order to go to a Food Bag store to buy dog food for her dog. She took her dog with her and intended to exercise the dog at the Comstock Park after her purchase of dog food. The plaintiff was out of canned dog food on this date and that was the reason for her leaving the home with the dog. She followed a practice that she had previously engaged in, in taking the animal with her. At some period of time, perhaps twenty minutes to forty minutes after she left the home, the plaintiff was engaged by a worry that she had perhaps left her hairdryer on and returned home for the purpose of checking on that mechanical device. When she returned to her home she discovered a fire in progress and immediately went to her neighbor, Mr. Rizzo, and requested him to call 911. The local fire department responded and the fire was appropriately brought under control after having caused extensive damage to the home and contents of the plaintiff.
Within approximately two months prior to the date of the fire the plaintiff had arranged with her neighbor, Mr. Rizzo, to paint the inside of her home during the springtime. At about the same time she had also purchased a new stereo for her home.
Also, within said time frame, the plaintiff had applied for a $25,000 home equity loan from Equity Lenders and had been informed prior to the fire that the loan would be approved. She had also made inquiry of the Fleet Banking Connection with a loan in the similar amount which application she withdrew initially and then reinstated shortly before the fire. The plaintiff was in the process of making definitive arrangements for a $25,000 loan in order to accomplish upgrading of her house and consolidation of some obligations.
In 1995, the plaintiffs monthly income increased to $817.00 per month and she had a monthly recurring obligation of $187.10 for CT Page 2439 her mortgage payment which mortgage had a principal balance of $14,516.94. At the time of the incident involved herein, the market value of the plaintiffs home was between $80,000.00 and $100,000.00. She also had obligations to Sears of approximately $500.00 and to the town of East Hampton for property taxes and sewer assessments in the total amount of $8,800.00.
The court concludes that her actions in connection with the refinancing of her home or the arrangements for an equity line of credit in order to consolidate her obligations, were well within her means to so do and represented a very reasonable course of action for a homeowner in her circumstances. The court finds that the actions of the plaintiff do not provide any reasonable basis to infer an intent or motive on her part to set fire to her home.
The primary area or origin of the fire was in the corner bedroom at the bedpost closest to the door of the bedroom. At the time of the fire there was an electric blanket that had been on that bed in that room. There was an extension cord from said blanket plugged into the wall bracket with the cord running under the bed.
There was another small area of charring near the foot of the bed in the plaintiffs bedroom, which resulted in some charring of the materials and flooring. There was also located approximately seven or eight feet from this area under the bed a partially balled up piece of newspaper.
By the time the fire marshals arrived and conducted an investigation the materials had been removed from the guest bedroom and the inspection was conducted on the front lawn where the damaged bed and associated materials were reassembled.
There was extensive radiation of heat damage throughout the house and the only real hot spot that the fire officials could ascertain was in said guest bedroom on the floor near the headboard of the bed.
On the night of the fire, the responding officials used the service of a trained dog to search for accelerants and no accelerants were ever located by said dog or by the fire officials. Detective Baxter concluded that there was no accidental cause of the fire but he had never examined the extension cord nor talked with the plaintiff. There was never located any unburned newspaper or other flammable material found CT Page 2440 in the home that could be traced as a source of the origin of the fire.
During the period of time concerned herein, the front door to the house had been left unlocked.
The evidence provided by the defendant, and indeed the plaintiff, has failed to establish the specific cause of the fire in the corner bedroom of the home or the specific cause of the burned area in the plaintiffs own bedroom. Indeed the fire marshal and Detective Baxter have testified that they do not know what caused the fire but have made some assumptions based on this lack of knowledge and lack of other known causes or origins that the fire, in fact, was set by the plaintiff.
While this was not the most sophisticated analysis of the fire, the officials involved, although they did not view all of the available evidence, arrived at the conclusion of arson based on their inability to establish any other cause for the fire. This, the court views as speculative. The defendant's scrutiny and conclusions concerning the financial situation of the plaintiff as providing an adequate basis to assist in establishing her intent to destroy her own home by fire are inadequate and the defendant has failed to establish by a fair preponderance of the evidence that the plaintiff was directly involved, or contrived in any way, with the causing of the fire at her premises that resulted in the damages hereinafter set forth. There is insufficient evidence for this court to conclude that the plaintiff had any motive to set fire to her home or that she practiced any fraud upon the defendant.
As a result of the fire the plaintiff sustained damage to the premises and the contents therein.
From the evidence the court finds that the actual cash value for the loss and damage to the plaintiffs personal property is $44,821.00, and said figure is stipulated by the parties. In addition, the plaintiff has incurred reasonable alternate living expenses in the amount of $4,048.00. And finally it is found that the actual cash value for the damage to the plaintiffs dwelling after a reduction in the deductible amount is $42,472.93. Accordingly, the court finds that the plaintiff has established by a fair preponderance of the evidence that the damages and losses that she has sustained in result of this fire are in the total amount of $91,341.93. The court declines to award interest CT Page 2441 in connection with this claim.
Judgment is entered in favor of the plaintiff to recover of the defendant the said sum of $91,341.93.
It is so ordered.
HIGGINS, J.